**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ronald Wayne BEATY, Defendant-Appellant.**

No. 71–2852.

United States Court of Appeals,
Ninth Circuit.

Aug. 11, 1972.

As Amended on Denial of Rehearing
Sept. 25, 1972.

Romines, Wolpman, Tooby, Eichner, Sorensen, Constantinides & Cohen, Menlo Park, Cal., for appellant; Norton Tooby, Menlo Park, Cal., of counsel.

N. Warner Lee, Asst. U. S. Atty. (argued), William C. Smitherman, U. S. Atty., Phoenix, Ariz., for appellee.

Before DUNIWAY, CARTER and GOODWIN, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

Appellant appeals from a conviction for knowingly transporting persons in interstate commerce who had theretofore been kidnapped and held for the purpose of aiding appellant and assisting him to escape arrest. 18 U.S.C. § 1201. He was sentenced to twenty years, on two counts, to run concurrently.

He raises three contentions: (1) error in denying appellant's motion to suppress evidence seized from an automobile without a warrant; (2) error in denial of motion for a continuance of the

trial for more than one day; and (3) error by the district court in denying his motion to inspect jury selection records under 28 U.S.C. §§ 1867(f) and 1868.

Appellant and a co-defendant, Veale, escaped from the California Institution for Men, Chino, California, on the night of November 1, 1970. The two men seized a car; ordered the occupants, Vicario and Sanchez, at knife point, to get into the back seat; drove the car into Arizona; and while being pursued by Arizona officers at high speed, crashed into another car.

Following the collision, appellant and co-defendant Veale were unconscious and Sanchez, semi-conscious. The two defendants were arrested and transported to a hospital. Their clothes and personal effects were placed in separate plastic bags at the hospital.

The wrecked car was searched and the knife, found in plain view between the dashboard and the windshield, was seized. The plastic bags were later opened and the clothing and personal effects seized without a search warrant.

The defense presented at the trial was that Vicario and Sanchez accompanied the defendants voluntarily as part of a plan to aid their escape. The jury rejected the defense. No question as to the sufficiency of the evidence to sustain the conviction is presented.

I

### The Search and Seizure Claim

At argument, appellant's counsel abandoned his contentions concerning the search and seizure. In view of the defense theory presented to the jury, he conceded that appellant suffered no prejudice.

II

### Denial of a Continuance on the Trial Date

Appellant moved for a continuance on the day set for trial and the motion was granted for only one day. We hold the trial court's action was within its discretion and not error.

The appellant was arrested on November 2, 1970. On November 3, a complaint was filed before the U. S. Commissioner and on November 4, Karas, the Federal Defender, was appointed as appellant's attorney.

The case was first set for trial on March 2, 1971. On motion of appellant, it was continued to July 13, 1971. Appellant moved to be permitted to proceed without an attorney, but the court, on May 26, 1971, re-appointed Karas as advisory counsel to furnish reasonable legal assistance, research and advice upon appellant's request both prior to and during the trial.

On appellant's motion the trial date of July 13, 1971 was vacated and a new trial date set for September 7, 1971. Subsequently the trial was continued to Sept. 8, 1971.

On July 29, 1971, the court, noting an impasse between Karas, the advisory counsel, and appellant, relieved Karas and at appellant's request, appointed Allen B. Bickart as advisory counsel and instructed him to give legal advice and assistance prior to trial and to be present during the trial.

On September 8, 1971, the date set for trial, appellant, acting in pro per, moved for a ten-day to two-week continuance. He stated that on September 2, 1971 (during the hearing of a motion) he had informed the court that he would allow Allen Bickart, his advisory counsel, to conduct the defense of his case.[1] Appel-

---

1. The reporter's transcript of September 2, 1971 contains the following:

   "*Beaty*, [*Appellant*] . . . . when I asked for Mr. Bickart's appointment, I said that this was a man I had confidence in, and through the past month I have—this confidence has grown.

   I believe this man is capable to present my case to this Court or to any Court in such a manner that I can prove my innocence and that I, at least, will have a fair and impartial trial.

   And at this moment I will just give my file to Mr. Bickart and say I don't

lant also stated that ten days before September 8, he had decided to have Bickart conduct his defense, but that since the trial judge was out of the jurisdiction, he made no motion. He further stated, "The defense is fairly well prepared now, and what we need is time for Mr. Bickart to absorb this voluminous file and the many ramifications."

Bickart expressed his concern about being able to properly try the case, but stated he would abide by the decision of the court denying a continuance. An inspection of the trial transcript, including Bickart's argument to the jury, indicates he did a competent job in presenting appellant's sole defense, viz., that Vicario and Sanchez accompanied him voluntarily to Arizona.

The trial had been twice continued and Government witnesses had been present on both occasions. The court granted a one-day continuance and the case proceeded to trial on September 9, 1971.

■ The granting or denial of a motion for a continuance rests in the sound discretion of the court. Absent an abuse of that discretion, a denial of a continuance is not error. United States v. Harris (9 Cir. 1970) 436 F.2d 775; Daut v. United States (9 Cir. 1969) 405 F.2d 312; Joseph v. United States (9 Cir. 1963) 321 F.2d 710, cert. den. 375 U.S. 977, 84 S.Ct. 497, 11 L.Ed.2d 422 (1964).

■ Appellant had counsel assigned from the time of his appearance before the Commissioner on November 4, 1970. Subsequently, the counsel was assigned as an advisory counsel. On July 29, 1971, Bickart was assigned at appellant's

request as advisory counsel. By September 2, 1971 appellant had decided he would have Bickart try his case. On that date the court informed appellant and Bickart that the case would proceed to trial on the date set and Bickart should be present in court to conduct a defense, if the appellant chose not to do so. A motion for continuance was denied.

On September 8, 1971, appellant finally made the request that Bickart try the case and the one-day continuance was granted. We find no abuse of discretion.

### III

*The Motion to Inspect Jury Selection Records*

Appellant filed a motion in pro per on June 30, 1971, for inspection of the jury selection records. The court denied the motion on July 14, 1971, as "not timely made, . . . not supported by sworn statements of fact (28 U.S.C. § 1867(d)), is a fishing expedition with no justification shown and is apparently made for the purpose of delay."

Appellant renewed his motion on July 28, 1971. He pointed out that 28 U.S.C. § 1867(a) permits a jury challenge "before the voir dire examination begins"; that 28 U.S.C. § 1867(f) relates to inspection of records before the challenge motion and that 28 U.S.C. § 1868 permits an inspection of records in the possession of the clerk.

The district court on July 28, 1971, filed an order denying appellant's motion for "unlimited inspection of the

want pro per, let Mr. Bickart handle this, but Mr. Bickart has not seen my case. He doesn't know my file. He's not prepared to go to trial next week and defend me. He can't prepare a defense in 78 hours, 72 hours.
*The Court.* Well, the motion for a continuance is denied and the matter will proceed to trial next Tuesday (9/7/1971), with you acting either in pro per, as you have requested before, or represented by Mr. Bickart . . .

*Beaty.* From this date forward there will be no defense on this case. At this time I want the Court to know I stand mute and there will be no defense, there will be no one representing me, including myself. You can try this case without me . . .
*The Court.* Mr. Bickart, you will be here to conduct a defense, whether the defendant is in the courtroom or outside the courtroom. The matter will proceed to trial."

jury records." On August 9, 1971, the court filed an amended order of denial, reciting that the records were being currently used and numbered in the thousands; that no facts had been given to the court to show a probability of merit to the proposed jury challenge; and that the granting of the motion would "create serious security problems and interfere with the United States Marshal's responsibility for prisoner security."

The "Jury Selection and Service Act of 1968," Pub.L. 90–274, enacted March 27, 1968, 82 Stat. 54 et seq., appears in 28 U.S.C., Chapter 121, §§ 1861–1871. § 1863 sets up a "Plan for random jury selection;" § 1864 concerns "Drawing of names from the master jury wheel; completion of juror qualification form;" § 1866 provides for the "Selection and summoning of jury panels;" § 1867 concerns "Challenging compliance with selection procedures;" and § 1868 concerns the "Maintenance and inspection of records." §§ 1867 and 1868 are set forth in the margin.[2]

2. § 1867. Challenging compliance with selection procedures

(a) In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

(b) In criminal cases, before the voir dire examination begins, or within seven days after the Attorney General of the United States discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the Attorney General may move to dismiss the indictment or stay the proceedings on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

(c) In civil cases, before the voir dire examination begins, or within seven days after the party discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, any party may move to stay the proceedings on the ground of substantial failure to comply with the provisions of this title in selecting the petit jury.

(d) Upon motion filed under subsection (a), (b), or (c) of this section, containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title, the moving party shall be entitled to present in support of such motion the testimony of the jury commission or clerk, if available, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence. If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the grand jury, the court shall stay the proceedings pending the selection of a grand jury in conformity with this title or dismiss the indictment, whichever is appropriate. If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the petit jury, the court shall stay the proceedings pending the selection of a petit jury in conformity with this title.

(e) The procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime, the Attorney General of the United States or a party in a civil case may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title. Nothing in this section shall preclude any person or the United States from pursuing any other remedy, civil or criminal, which may be available for the vindication or enforcement of any law prohibiting discrimination on account of race, color, religion, sex, national origin or economic status in the selection of persons for service on grand or petit juries.

(f) The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion under subsection (a), (b), or (c) of this section, until after the master jury wheel has been emptied and refilled pursuant to section 1863(b) (4) of this title and all persons selected to serve as jurors before the master wheel was emptied have completed such service. The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion. Any person who discloses the

§ 1867(a) provides for a motion to dismiss the indictment or stay the proceedings by a defendant for substantial failure to comply with the provisions of the Act in selecting the grand or petit jury. § 1867(f) provides in part: "The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion."

§ 1868 provides that after the master jury wheel is emptied and refilled pursuant to § 1863(b) (4), "all records and papers compiled and maintained by the jury commission or clerk before the master wheel was emptied shall be preserved in the custody of the clerk for four years or for such longer period as may be ordered by a court, and shall be available for public inspection for the purpose of determining the validity of the selection of any jury."

This circuit considered certain phases of the Arizona jury plan in United States v. Martinez (9 Cir. 1970), 436 F. 2d 12. The case does not consider the question of a defendant's right to inspect records pursuant to §§ 1867(f) and 1868. We do not pass on its impact on a motion to challenge jury selection made after inspection.

A limited number of cases have considered the new Jury Selection and Service Act of 1968. In United States v. Poindexter (S.D.N.Y.1971), 325 F.Supp. 786, the court granted an application to inspect records under § 1867(f). However, the defendant subsequently stated his inability to substantiate his conten-

tion that there had been a substantial failure to comply with the provisions of the Act. See also United States v. Tijerina (10 Cir. 1971) 446 F.2d 675, 681, n. 5, where the court did not reach the question of the statutory right to inspect records since appellant in that case asserted no such claim, but contended the matter rested in the discretion of the court.

For cases considering motions challenging jury plans and/or jury selection under § 1867(a) and/or the sufficiency of the "statement of facts" under § 1867 (d), *see*: United States v. James (9 Cir. 1971) 453 F.2d 27; United States v. Silverman (2 Cir. 1971) 449 F.2d 1341; United States v. Hyde (5 Cir. 1971) 448 F.2d 815; United States v. Kuhn (5 Cir. 1971) 441 F.2d 179; United States v. Martinez, *supra* (436 F.2d 12); United States v. Canty (4 Cir. 1970) 422 F.2d 358. Also, see generally, United States v. Duncan (9 Cir. 1972) 456 F.2d 1401.

█ The trial court was in error. The statutes clearly mean what they state. Appellant or his attorney or investigator, as the court might direct depending upon the circumstances, was entitled to inspect the old records from the master jury wheel under § 1868 and the "contents of records or papers used by the jury commission or clerk in connection with the jury selection process . . . ", under § 1867(f).

█ It is true that the appellant was a felon who had suffered four prior convictions and had served many years in prison. The court was free to fashion how the inspection should be made and could have provided that appellant's at-

*contents of any record or paper in violation of this subsection may be fined not more than $1,000 or imprisoned not more than one year, or both. As amended Mar. 27, 1968, Pub.L. 90-274, § 101, 82 Stat. 59.*

*§ 1868. Maintenance and inspection of records*

*After the master jury wheel is emptied and refilled pursuant to section 1863(b) (4) of this title, and after all persons selected to serve as jurors before the master*

*wheel was emptied to have completed such service, all records and papers compiled and maintained by the jury commission or clerk before the master wheel was emptied shall be preserved in the custody of the clerk for four years or for such longer period as may be ordered by a court, and shall be available for public inspection for the purpose of determining the validity of the selection of any jury.*

*As amended Mar. 27, 1968, Pub.L. 90-274, § 101, 82 Stat. 60.*

torney or his investigator make the inspection if the court believed and found that appellant presented a security problem. Appellant was right in asserting that he had a right to make the inspection before he made a motion to challenge the jury under § 1867(a).

Although we hold the court erred in denying the motion to inspect, we do not think that a reversal of the conviction is now indicated. Having disposed of appellant's other contentions adversely to him, we remand the case to the district court for the purpose of allowing an inspection of the jury records and the filing of a motion by appellant under § 1867(a), if after the inspection, appellant finds grounds which he thinks will support a motion challenging the method of jury selection. The court will appoint counsel to represent appellant in the proceedings, unless appellant elects to proceed in pro per, in which case the court shall appoint advisory counsel to assist appellant in the motion proceedings. If appellant elects to proceed in pro per the trial court may impose conditions reasonably necessary to prevent the escape of appellant and to protect the records and files of the district court. Any motion to inspect shall be made within 90 days after the spreading of the mandate in the district court.

If a motion challenging the jury is made, the court shall hear and rule upon the matter, and if there has been a violation of the Jury Selection and Service Act which prejudices the appellant, the court shall grant a motion for a new trial; otherwise, deny the motion. Upon the completion of these proceedings, if a notice of appeal is filed, a supplemental reporter's transcript and a supplemental clerk's record shall be forwarded to this court, and briefs may be filed. If no notice of appeal is filed within the statutory time, the clerk shall so advise this court. This court retains jurisdiction to then finally dispose of the case.

Affirmed in part, reversed in part, and remanded for further proceedings in the district court.